UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
DANIEL E. CHARBONEAU,                :
                                     :
                Petitioner,          :    05 Civ. 1900 (MBM)
                                     :
        -against-                    :    OPINION AND ORDER
                                     :
Fredrick Menifee, Warden, Federal    :
Correctional Institution, Otisville, :
New York                             :
                                     :
                Respondent.          :
------------------------------------X

APPEARANCES

DANIEL E. CHARBONEAU, #83609-054
(Petitioner Pro Se)
FCI -- Camp Otisville
P.O. Box 1000
Otisville, NY 10963-1000

DAVID N. KELLEY, ESQ.
United States Attorney for the Southern District of New York
LAWRENCE H. FOGELMAN, ESQ.
Assistant United States Attorney
(Attorneys for Respondent)
86 Chambers Street, 3rd Floor
New York, NY 10007
(212) 637-2719

MICHAEL B. MUKASEY, U.S.D.J.

Daniel E. Charboneau, a federal prisoner, petitions pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, claiming that he is entitled to have the Federal Bureau of Prisons ("BOP") determine his eligibility for transfer to a Community Corrections Center ("CCC"), or what is commonly referred to as a "halfway house."  Petitioner challenges a policy implemented by the BOP in December 2002 that to comply with 18 U.S.C. § 3264(c), a federal prisoner may be transferred to a CCC only for a period equal to the last 10% of his sentence, not to exceed six months.  The prior BOP policy allowed transfer to a CCC for a period longer than the last 10% of a prison term, up to a maximum of six months.  Petitioner would have the court direct respondent to "disregard" the December 2002 policy and "immediately make a determination as to his eligibility for pre-release designation to a CCC pursuant to the BOP's practices, procedures and criteria prior to . . . December 2002."  (Pet. for Writ of Habeas Corpus 6.)  In his Traverse, petitioner challenges also the validity of the BOP's February 14, 2005 amendment to 28 C.F.R. §§ 570.20-.21, which as explained below, reaches the same substantive result as the December 2002 policy but is based on a different legal rationale.  For the following reasons, the writ is denied and Charboneau's petition is dismissed.

The litigation over the December 2002 policy and the later promulgation of the February 2005 regulations has been discussed extensively by other courts and need not be recounted in full here.  See, e.g., Moss v. Apker, No. 05 Civ. 2676, 2005 WL 1593016, at *1-3 (S.D.N.Y. July 6, 2005); Pimentel v. Gonzalez, 367 F. Supp. 2d 365, 367-69 (E.D.N.Y. 2005).  Briefly, before December 2002, the BOP could routinely designate or transfer prisoners to CCCs for periods longer than 10% of each inmate's prison term, usually up to a maximum of six months.  See Moss, 2005 WL 1593016, at *2; Zucker v. Menifee, No. 03 Civ. 10077, 2004 WL 102779, at *2 (S.D.N.Y. Jan. 21, 2004).  However, in December 2002, after the Department of Justice Office of Legal Counsel declared the BOP placement policy to be an "unlawful" interpretation of 18 U.S.C. § 3624(c),[1] the BOP determined that CCC designations would be limited to the final 10% of a prisoner's sentence, not to exceed six months.  See Terry v. Menifee, No. 04 Civ. 4505, 2004 WL 2434978, at *1-2 (S.D.N.Y.

---

[1] Section 3624(c) provides in relevant part:
> The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c) (2000).

Nov. 1, 2004).  This policy change spawned numerous challenges by

inmates, with the majority of courts in the Second Circuit,

including this one, holding, <u>inter alia</u>, that the December 2002

policy erroneously limited the BOP's broad discretion over the

placement of prisoners under 18 U.S.C. § 3621(b).[2]  <u>See</u> <u>Terry</u>,

2004 WL 2434978, at *3 n.2 (collecting cases).

In response to these holdings, the BOP proposed and

adopted new regulations pursuant to the notice and comment

procedures of the Administrative Procedure Act, 5 U.S.C. §§ 551-

59 ("APA").  Community Confinement, 69 Fed. Reg. 51213 (proposed

Aug. 18, 2004); Community Confinement, 70 Fed. Reg. 1659 (Jan.

10, 2005) (effective Feb. 14, 2005) (codified at 28 C.F.R. pt.

570) ("February 2005 Rule").  The new rule allowed BOP to limit

---

[2] Section 3621(b) provides in relevant part:
> The Bureau of Prisons shall designate the place of the
> prisoner's imprisonment.  The Bureau may designate any
> available penal or correctional facility that meets
> minimum standards of health and habitability
> established by the Bureau . . . that the Bureau
> determines to be appropriate and suitable, considering
> -- (1) the resources of the facility contemplated; (2)
> the nature and circumstances of the offense; (3) the
> history and characteristics of the prisoner; (4) any
> statement by the court that imposed the sentence . . .;
> and (5) any pertinent policy statement issued by the
> Sentencing Commission . . . . In designating the place
> of imprisonment or making transfers under this
> subsection, there shall be no favoritism given to
> prisoners of high social or economic status.  The
> Bureau may at any time, having regard for the same
> matters, direct the transfer of a prisoner from one
> penal or correctional facility to another.

18 U.S.C. § 3621(b) (2000).

CCC assignments to the same extent as it did under the December 2002 policy but provided "an alternative legal basis for the BOP's authority to do so." Pimentel, 367 F. Supp. 2d at 367. As Judge Garaufis has explained:

> [I]n promulgating the February 2005 Rule, BOP acknowledged that it had discretion to place offenders sentenced to a term of imprisonment in CCCs before the last ten percent of their sentence, but decided to "categorically exercise its discretion to limit inmates' community confinement to the last ten percent of their sentence, not to exceed six months." 69 Fed. Reg. at 51213. Thus, while the December 2002 Policy is premised on a lack of discretion, the February 2005 Rule is based on discretion that is "categorically exercised."

Id. at 373. In drawing this categorical line limiting CCC placements to the last 10% of an inmate's sentence, not to exceed six months, the BOP relied principally on the Supreme Court's decision in Lopez v. Davis, 531 U.S. 230 (2001), which upheld the BOP's categorical exercise of discretion under another provision of § 3621 on the ground that "[e]ven if a statutory scheme requires individualized determinations . . . the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Id. at 243-44 (internal quotation marks omitted).

Petitioner currently is serving a 24-month sentence at the Federal Correctional Institution ("FCI") in Otisville, New York. (Return ¶ 2.) Under the BOP policy in place before

December 2002, petitioner contends he would have been eligible

for transfer to a CCC on May 15, 2005. (Pet. for Writ of Habeas

Corpus 2-3.) Under either the December 2002 policy or the

February 2005 Rule, he is ineligible for transfer until September

14, 2005. (Ward Decl. ¶ 10.) Petitioner's projected release

date, assuming he receives all good time credit available, is

November 15, 2005. (Id. ¶ 15.)


II.

As a preliminary matter, respondent seeks dismissal of

Charboneau's petition for mootness and lack of standing, noting

that the December 2002 policy Charboneau challenges has been

superseded by the February 2005 Rule and therefore will not be

applied to him.[3] (Respondent's Mem. Opp'n to Pet. for Writ of

Habeas Corpus 7-9.) Respondent is correct that petitioner's

motion has been mooted by promulgation of the February 2005 Rule.

Yip v. Fed. Bureau of Prisons, 363 F. Supp. 2d 548, 551 (E.D.N.Y.

2005); Moss, 2005 WL 1593016, at *3. However, because the court

is obligated to construe a pro se litigant's petition liberally,

Fleming v. United States, 146 F.3d 88, 90 (2d Cir. 1998) (per

_____

[3] Although the government does not raise petitioner's
failure to exhaust his administrative remedies as a reason for
dismissal under § 2241, I excuse Charboneau's failure to appeal
his case further to the BOP Regional Office and General Counsel
on the grounds of futility, and the likelihood of irreparable
injury before further appeals could be exhausted. Terry, 2004 WL
2434978, at *2.

curiam), and because petitioner's Traverse makes clear that he wishes also to challenge the application of the February 2005 Rule to his case (see Petitioner's Traverse in Reply to Respondent's Opp'n 3-4 ("Pet'r Traverse")), this court construes Charboneau's petition as a direct challenge to the February 2005 Rule.[4]  See Levine v. Menifee, No. 05 Civ. 1902, 2005 WL 1384021, at *3 (S.D.N.Y. June 9, 2005), Moss, 2005 WL 1593016, at *4; Pimentel, 367 F. Supp. 2d at 372; Wiesel v. Menifee, No. 04 Civ. 9681, 2005 WL 1036297, at *4 (S.D.N.Y. May 2, 2005).  With his petition so recast, petitioner has standing to challenge the February 2005 Rule.


III.

Recent cases have addressed the validity of the February 2005 Rule, with the majority of courts in this circuit upholding the regulation as a permissible, albeit categorical, exercise of the BOP's broad discretion to designate and transfer inmates under 18 U.S.C. § 3621(b).  Compare Gentzler v. United States, No. 05 Civ. 4521, 2005 WL 1773684 (S.D.N.Y. July 27, 2005) (upholding February 2005 Rule); Moss, 2005 WL 1593016 (same); Troy v. Apker, No. 05 Civ. 1306, 2005 WL 1661101

---

[4] However, because the February 2005 Rule was promulgated through formal notice and comment procedures under the APA, the court does not construe petitioner's Traverse as a request to apply an APA challenge to the new rule.  Levine v. Menifee, 2005 WL 1384021, at *3 n.1.

6

(S.D.N.Y. June 30, 2005) (same); <u>Levine</u> v. <u>Menifee</u>, 2005 WL
1384021 (same); <u>Levine</u> v. <u>Apker</u>, No. 05 Civ. 3472, 2005 WL
1417134 (S.D.N.Y. May 20, 2005) (same); <u>Yip</u>, 363 F. Supp. 2d 548
(same); <u>Wiesel</u>, 2005 WL 1036297 (same but finding violation of <u>Ex
Post Facto</u> Clause as applied to petitioner), <u>with</u> <u>Pimentel</u>, 367
F. Supp. 2d 365 (invalidating February 2005 Rule); <u>Drew</u> v.
<u>Menifee</u>, No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005)
(same).  This court agrees with the decisions of those courts
that have upheld the February 2005 Rule and adopts their analyses
as its own.  However, I offer the following additional comments
to respond directly to the specific arguments made by petitioner
and to state the grounds for my disagreement with the conclusions
reached in <u>Pimentel</u> and <u>Drew</u>.

Petitioner's arguments notwithstanding, this case
involves the straightforward application of the Supreme Court's
decision in <u>Lopez</u> v. <u>Davis</u>, 531 U.S. 230 (2001).  <u>See</u> <u>Moss</u>, 2005
WL 1593016, at *6 ("The policy upheld by the Supreme Court in
<u>Lopez</u> is indistinguishable in all material respects from the one
at issue in this case."); <u>Wiesel</u>, 2005 WL 1036297, at *6 ("The
reasoning in <u>Lopez</u> is equally applicable to the present case.");
<u>Yip</u>, 363 F. Supp. 2d at 552 ("There is no significant distinction
between the situation in <u>Lopez</u> and the case at hand.").

In <u>Lopez</u>, the Supreme Court upheld the BOP's
categorical exercise of its discretion to exclude certain inmates
-- those convicted of offenses involving firearms -- from

discretionary early release eligibility after successful completion of a drug treatment program under 18 U.S.C. § 3621(e)(2)(B). The Court allowed BOP to exercise its discretion through the issuance of a categorical rule, holding that "[e]ven if a statutory scheme requires individualized determinations," which was not the case in Lopez, "the decisionmaker has the authority to rely on rulemaking to resolve certain issues of general applicability unless Congress clearly expresses an intent to withhold that authority." Lopez, 531 U.S. at 243-44 (quoting Am. Hosp. Ass'n v. NLRB, 499 U.S. 606, 612 (1991)); see also id. at 244 ("The Bureau is not required continually to revisit issues that may be established fairly and efficiently in a single rulemaking proceeding.") (internal quotation marks omitted). Noting that the statute itself was silent about how the BOP was to exercise its discretion (i.e., on a case-by-case basis or categorically), the Court upheld the BOP regulation as having "filled the statutory gap in a way that is reasonable in light of the legislature's revealed design." Id. at 242 (internal quotation marks omitted).

In his Traverse, Charboneau offers two main arguments to distinguish Lopez. First, he contends that unlike the statute at issue in Lopez, the one at issue here, 18 U.S.C. § 3621(b), establishes a "discretionless obligation" governing the designation and transfer of federal inmates by the BOP. (Pet'r Traverse 6 (citing Lopez, 531 U.S. at 241).) In so arguing,

8

petitioner looks no further than the first sentence of § 3621(b).
However, although the statute provides that the BOP "shall
designate the place of the prisoner's imprisonment," the
remainder of the provision indicates repeatedly that the BOP's
authority to designate or transfer an inmate to a particular
facility such as a CCC is broad and discretionary.  See 18 U.S.C.
§ 3621(b) (providing that the BOP "may designate any available
penal or correctional facility . . . that the Bureau determines
to be appropriate and suitable, considering" five listed factors,
and that the BOP "may at any time, having regard for the same
matters, direct the transfer of a prisoner from one penal or
correctional facility to another") (emphases added).  By
designating petitioner to FCI Otisville, the BOP has satisfied
its statutory obligation even under the language cited by
petitioner, Levine v. Menifee, 2005 WL 1384021, at *5, and no
other language in § 3621(b) requires the BOP to consider
transferring petitioner to a CCC before the 10% date mandated by
18 U.S.C. § 3624(c).  See Troy, 2005 WL 1661101, at *2; Levine v.
Menifee, 2005 WL 1384021, at *5; Yip, 363 F. Supp. 2d at 552.

        Second, petitioner argues that unlike the BOP
regulation in Lopez, which limited early release eligibility
based on an inmate's pre-conviction conduct, the February 2005
Rule "fails because the BOP does not establish a category of
prisoners from the class of all prisoners to whom a restriction
[against transfer] to a CCC applies, but rather, restricts the

time the BOP may place the prisoner in a CCC." (Pet'r Traverse
9; see also id. at 10 ("In the New 10 percent Rule, there is no
designation of a category; the rule applies to all prisoners who
will receive consideration for placement in a CCC.").)
Petitioner's semantic distinction between a "class" and a
"category" of prisoners, however, is unavailing. As Judge
Gershon has noted, the BOP has in fact "identified a category of
prisoners -- inmates who are not yet required to be considered
for transfer to a CCC under Section 3624(c), but are eligible
under Section 3621(b) -- and created a rule denying transfer to
all of them, in conflict with no identified directive of
Congress." Yip, 363 F. Supp. 2d at 552; see also Levine v.
Menifee, 2005 WL 1384021, at *5 ("If the BOP is not obligated to
consider transferring any inmate to a CCC, then it is not
unreasonable to conclude that it has the authority to consider
transferring only certain categories of inmates to a CCC such as
those in the final ten percent of their terms of imprisonment.").
Even assuming that the § 3621(b) factors apply equally to the
timing of an inmate's transfer to a CCC, rather than simply "the
substantive decision whether or where to transfer the prisoner,"
Troy, 2005 WL 1661101, at *3 (emphases added), the February 2005
Rule remains valid because it "represent[s] the permissible,
categorical exercise of the discretion statutorily granted to the
BOP." Id.

      Of the courts in this circuit that have assessed the

validity of the February 2005 Rule, only two thus far have concluded that the new policy exceeds the BOP's authority under Lopez.  See Pimentel v. Gonzalez, 367 F. Supp. 2d 365 (E.D.N.Y. 2005); Drew v. Menifee, No. 04 Civ. 9944, 2005 WL 525449 (S.D.N.Y. Mar. 4, 2005).  Although both Pimentel and Drew acknowledge that the BOP is permitted to make categorical determinations through rulemaking proceedings, each questions the validity of the February 2005 Rule on two grounds: (i) that § 3621(b) and its legislative history "specifically require[]" the BOP to consider each statutory factor when making any designation or transfer decision, Pimentel, 367 F. Supp. 2d at 375; see also Drew, 2005 WL 525449, at *4 ("Section 3621(b) sets forth factors that the BOP must consider in determining the facility to which a prisoner is designated."); and (ii) that the BOP regulation "in no way furthers or interprets these factors [but instead] disregards them."  Pimentel, 367 F. Supp. 2d at 375; see also Drew, 2005 WL 525449, at *4 (concluding that the February 2005 Rule "simply posits a uniform rule that entirely ignores Section 3621(b)'s command").

Like Judge Lynch, I find this analysis "thoughtful, but ultimately unpersuasive."  Troy, 2005 WL 1661101, at *2.  First, as noted above, nothing in the text of § 3621(b) shows that Congress imposed a mandatory obligation on the BOP to consider each listed factor in every decision to designate or transfer an inmate.  See 18 U.S.C. § 3621(b) (stating that the BOP "may at

11

any time, <u>having regard for</u> the [statutory factors], direct the
transfer of a prisoner from one penal or correctional facility or
another"). At a minimum, the BOP's interpretation of § 3621(b)
cannot be said to be so unreasonable as to overcome the
"substantial deference" accorded the BOP in interpreting a
statute that it is charged with administering. See <u>Levine</u> v.
<u>Menifee</u>, 2005 WL 1384021, at *5; <u>Wiesel</u>, 2005 WL 1036297, at *5
(internal quotation marks omitted).

 Lacking textual support for requiring the BOP to
consider each statutory factor, <u>Drew</u> and <u>Pimentel</u> resort to the
statute's legislative history. <u>Drew</u>, 2005 WL 525449, at *4;
<u>Pimentel</u>, 367 F. Supp. 2d at 375. Apart from the "inherent
mischief" of that exercise, <u>see, e.g.</u>, <u>Chicago</u> v. <u>Env'tal Def.</u>
<u>Fund</u>, 511 U.S. 328, 337 (1994) (discussing the perils of relying
on legislative history to interpret a statute), Section 3621's
history is at best "ambiguous and unenlightening." <u>Wiesel</u>, 2005
WL 1036297, at *7 (quoting <u>Rust</u> v. <u>Sullivan</u>, 500 U.S. 173, 186
(1991)); <u>see also</u> S. Rep. No. 98-225, <u>reprinted in</u> 1984
U.S.C.C.A.N. 3182, 3324-25 (stating that the BOP is "specifically
required to consider such factors as" those listed in 3621(b) but
acknowledging that "by listing factors for the Bureau to
consider," the Senate Judiciary Committee "does not intend to
restrict or limit the Bureau in the exercise of its existing
discretion . . . but intends simply to set forth the appropriate
factors that the Bureau <u>should</u> consider in making the

12

designations") (emphasis added).  Accordingly, I disagree with
the reliance placed on § 3621(b)'s legislative history by <u>Drew</u>
and <u>Pimentel</u>.

Furthermore, it is simply incorrect to assert that the
BOP failed to consider "any" of the § 3621(b) factors.  <u>See</u> <u>Drew</u>,
2005 WL 525449, at *4.  In its notice of proposed rulemaking, the
BOP stated that it had "carefully considered all of the
statutorily-specified factors," singling out as "most
significant" its determination that the new rule would be
consistent with policy determinations made by the Sentencing
Commission (factor 5) and would promote optimal use of BOP
facility resources (factor 1).  69 Fed. Reg. at 51,214 (stating
also that the new rule would deter criminal activity, further
congressional sentencing policy, and satisfy the § 3621(b)
prohibition of favoritism for inmates of high social or economic
status).  Even assuming that the BOP explicitly considered only
two of the five statutory factors, its designation of those
considerations as "most significant" conveys an implicit judgment
that such factors outweighed any other considerations, statutory
or otherwise.  <u>See</u> <u>Moss</u>, 2005 WL 1593016, at *7 ("Nothing in §
3621(b) regulates the weight that the BOP must give to each of
the factors enumerated by the statute, even if the statute were
read to require BOP to give at least <u>some</u> consideration to each
factor."); <u>Troy</u>, 2005 WL 1661101, at *2 ("By implication, the BOP
has determined that those factors categorically outweigh any of

13

the other factors in § 3621(b) which might tend toward earlier

CCC placement in an individual case, and has thus engaged in

precisely the sort of categorical decisionmaking appropriate even

under the reasoning in Piment[e]l.").  Thus, because the BOP

appears to have been "guided" sufficiently by the § 3621(b)

factors in formulating the February 2005 Rule, cf. Drew, 2005 WL

525449, at *5, the court must reject petitioner's argument that

the BOP could not follow the categorical approach it took here.


                                IV.

          Petitioner argues in the alternative that even if the

February 2005 Rule is held to be a lawful exercise of the BOP's

authority under § 3621(b), the new rule as applied to him

violates the Ex Post Facto Clause because it went into effect

after petitioner's sentence was imposed and thus would undermine

his "reasonable expectation that the BOP would consider him for

placement in a CCC for up to six months before the end of his

sentence."  (Pet'r Traverse 12-13.)  However, as demonstrated by

the District Court's exhaustive analysis in Levine v. Menifee,

No. 05 Civ. 1902, 2005 WL 1384021 (S.D.N.Y. June 9, 2005),

although the February 2005 Rule constitutes "a change in the

prevailing legal regime," it "does not amount to an increased

penalty because it does not have the purpose or effect of

enhancing the penalty associated with Petitioner's crime."  Id.

at *7; see also Lee v. Governor of N.Y., 87 F.3d 55, 59 (2d Cir.

1996) (state statute and executive order retroactively limiting certain inmates' access to temporary release programs did not "constitute an increase in punishment" because "[t]heir evident purpose [was] not to add punishment, but rather to serve the regulatory purpose of limiting early community contact for those in the designated felony categories"); Troy, 2005 WL 1661101, at *3 (holding that although the February 2005 regulations "alter the conditions of petitioner's confinement by limiting the period of time in which he may serve out that confinement in a lower security facility," such altered conditions "do not have the purpose and effect of increasing punishment, and therefore, do not rise to the level of an ex post facto violation"). As a result, the February 2005 Rule "falls on the lawful side of the ex post facto line." Lee, 87 F.3d at 59.

          *               *               *

          For the reasons stated above, petitioner's motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 is denied, and the petition is dismissed.

                                        SO ORDERED:


Dated:     New York, New York          Michael B. Mukasey
           August 24, 2005             U.S. District Judge

                              15